## IN THE COURT OF COMMON PLEAS
## MERCER COUNTY, OHIO

| | | |
|---|---|---|
| BILLY KEY<br>6530 Thackery Rd.<br>Urbana, OH 43078 | )<br>)<br>)<br>) | CASE NO. 20-CIV-064<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| TAYLOR COMMUNICATIONS, LLC<br>515 W. Sycamore Street<br>Coldwater, Ohio 45828 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>Taylor Communications, LLC<br>c/o Hugh Taylor (Stat. Agent)<br>4391 Churchill Blvd<br>University Heights, Ohio 44118 | )<br>)<br>)<br>)<br>)<br>) | Sup. R. 37 Statistical Report __A__<br>Classification _____ |
| -and- | )<br>) | FILED<br>11:03 |
| TRISH BURTCH<br>c/o Taylor Communications, LLC<br>515 W. Sycamore Street<br>Coldwater, Ohio 45828 | )<br>)<br>)<br>) | AUG 28 2020<br><br>MERCER COUNTY CLERK OF COURTS<br>CELINA, OHIO |
| Defendants. | ) | |

Plaintiff Billy Key, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

### PARTIES, JURISDICTION, & VENUE

1. Key is a resident of the city of Urbana, Champaign County, state of Ohio.

2. Defendant Taylor Communications, LLC ("Taylor") is a domestic company that conducts business throughout the state. The events that give rise to the claims for relief in this Complaint occurred at and around its location at 515 W. Sycamore Street, Coldwater, Ohio 45828.



3. Taylor is, and was at all times hereinafter mentioned, Key's employer within the meaning Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 *et seq.* and R.C. § 4112.01(A)(2).

4. Upon information and belief, Defendant Trish Burtch is a resident of Ohio.

5. Burtch is, and was at all times hereinafter mentioned, a manager, supervisor, and/or agent of Taylor, and as such, an employer within the meaning of R.C. § 4112.01(A)(2).

6. All of the material events alleged in this Complaint occurred in or around Mercer County, Ohio and its surrounding areas.

7. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1), (3), and/or (4).

8. Venue is proper pursuant to Civ. R. 3(B)(2), (3), and/or (5).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

10. Key is a former employee of Taylor.

11. At all times noted herein, Key was qualified for and could fully perform the essential functions of his job.

12. Key worked for Taylor, ending as a production supervisor, from in or around August 2003 until Taylor terminated Key's employment on March 6, 2020 without reason cited.

13. Key was age 56 at the time of his termination and is disabled due to a history of strokes and cancer, placing him in protected classes for age and disability, respectively.

FILED

AUG 28 2020

MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

2

14. Taylor had notice of both of Key's protected classes: he aged to 40 (and older) and had strokes during his employment with Taylor. He also developed cancer in or around 2017, also during his employment and of which Taylor had notice.

15. Key is substantially older than the others named herein.

16. Key had an exemplary employment record with no meaningful history of discipline during his approximately 17 years with Taylor.

17. Taylor initially hired Key as a third shift supervisor.

18. During his time as a third shift supervisor, Taylor praised Key for his performance and switched him to a day shift position.

19. In or around 2012, Taylor promoted Key to quality manager, which he accepted.

20. In or around 2017 Taylor offered Key the production supervisor position, which he accepted.

21. At the time, Taylor was reducing the footprints of their plants and had Key help during closing processes.

22. Key was also responsible for training employees who were put out of work due to those closures.

23. Taylor then began putting financial gain in front of the wellbeing of their employees, including Key, by forcing production to begin too early.

24. Production was supposed to begin in February 2018, but Taylor instead forced production to begin early on or about December 26, 2017.

25. Neither the machines nor the employees in the plants were ready to begin, but Taylor did not care, even after Key expressed his concerns about the early start date.

FILED
AUG 28 2020
MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

26. Taylor also expected production to be as efficient as it was before. This was impossible given the lack of preparation and steep learning curve involved.

27. Key tried explaining the lower production issues to David Clapper, (production manager).

28. Clapper shared Key's concerns and both complained to Taylor, but to no avail.

29. In or around May 2017, Key was diagnosed with prostate cancer.

30. In or around June 2017, Key gave notice of the cancer, a serious health condition and a disability, to Taylor.

31. When Key disclosed his cancer to Taylor, Taylor neither mentioned FMLA nor advised Key of his FMLA rights. This constituted Taylor's interference with Key's FMLA rights at the time.

32. Taylor instead made several promises to accommodate Key's disabilities, but never actually followed through.

33. Key attempted to engage in the interactive process of finding a reasonable accommodation at this time, but Taylor never made good on its promises.

34. As a result, Taylor forced Key to continue working with his disability and failed to engage in the interactive process and/or failed to reasonably accommodate him.

35. In or around early 2018, pressure began to mount as Taylor continued to expect more production from their employees than was possible under the circumstances.

36. Around this time, Clapper moved Key into the Quality Department as the Quality Control Manager.

37. In or around September 2018, Defendant Burtch (production manager) wrote Key up for not having enough ink on the shelves.

4

**FILED**

**AUG 2 8 2020**


MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

38. This accusation was outright false as Key had replaced the ink as requested, but Burtch wrote him up regardless.

39. This discipline was a foreshadow of the pretextual reasons Taylor would use to terminate Key's employment in the future.

40. In or around November 2018, Key applied for and began taking intermittent FMLA leave to help deal with the mounting stress his work was placing on his mental health.

41. Despite this serious health condition, Taylor constantly enflamed Key's stress in retaliation against Key taking the FMLA leave.

42. For example, in or around late 2019, Taylor requested that Key take on additional roles within the Quality Department while maintaining his current responsibilities. These increased duties did not include increased pay.

43. Disparately, Taylor wanted Key to do two jobs but only pay him for one. Taylor did not treat younger employees in the same manner. The company also did not treat similarly-situated non-disabled employees in such a discriminatory way.

44. Another example involved an incident where Key was tasked with putting together an analysis of the business.

45. Key had never done this before – it was the plant manager's job, not his, to do this analysis every year – so he asked for help.

46. Instead of supporting Key or assisting him with the task it forced him to do, Taylor told him to "just deal with it."

47. In or around January 2019, Key suffered two strokes. Key immediately gave notice to Taylor of the strokes and asked for an extension of his FMLA to include the new serious health condition.

FILED
AUG 28 2020
MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

48. Taylor refused to do so, requiring Key to file for a separate FMLA instead.

49. Burtch also forced Key to use his vacation days to cover additional missed days.

50. A week or so after, Key received his second write-up. Taylor alleged in the write-up that Key had failed to respond to a customer, despite Key having taken FMLA leave the day the customer had reached out to him.

51. Key told Burtch that he did not want to receive calls while he was out on FMLA, yet he still received them and was disciplined for not answering.

52. Key, trying to continue working as diligently as he was able, took the calls anyway even while at the hospital during his treatment.

53. Key refused to sign the unfair write-up and filed a written protected complaint of discrimination, harassment, and retaliation to Human Resources. Despite this protected action, no remedial actions were taken.

54. Key continued to use his FMLA throughout 2019 and ended the leave in or around October 2019 when he realized Taylor was retaliating against him for it.

55. In or around April 2019, Key again complained to the Director of Human Resources for Taylor, (Name Unknown, female, ("NU")), about his disparate treatment, retaliation, and false write-ups.

56. Neither NU nor anyone else in human resources ever responded to Key's complaint.

57. In or around November 2019, two errors occurred at Key's plant. After these errors, Taylor lost the account the errors were related to.

58. Key had requested mounted cameras be placed to avoid these errors from occurring prior to their occurrence, but Taylor denied that request.

FILED

AUG 28 2020

MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

59. Despite the plant manager, Daniel Driscoll, believing the errors not being the reason Taylor lost the account, Taylor blamed Key.

60. Key was not the cause of the errors and had even proposed a preventative measure against them. Rather, the errors had occurred as a result of one of the senior operators who had transitioned from an old plant.

61. Key consulted with Burtch to see if the employee who cause the errors needed to be disciplined as a result, but Burtch told Key not to do anything.

62. Burtch claimed that it would be "too expensive" to lose employees at that time.

63. Taylor did not want Key to discipline the employee that actually caused the error because they intended to use it as an excuse to terminate Key discriminatorily against his disabilities and age and to retaliate against him for taking FMLA leave and for making protected complaints.

64. Taylor terminated Key's employment on March 6, 2020 with no cited reasons.

65. Taylor could not have terminated Key's employment for his performance, as Taylor had given Key positive reviews and a raise as recently as February of 2020.

66. The company provided no other possible reasons for the adverse employment action.

67. Taylor actually terminated Key's employment for his age, his disabilities, because he took FMLA leave, and/or because he made protected complaints to Human Resources about the treatment he received while employed with Taylor.

68. Defendants' termination of Key was an adverse employment action against him.

69. Defendants' purported reason for Key's termination is pretextual.

FILED

AUG 28 2020


MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

70. Defendants actually terminated Key's employment discriminatorily against his age, disabilities, in retaliation for his complaints of disparate treatment, and/or in retaliation for his FMLA usage.

71. As a result of being wrongfully terminated from Taylor, Key has suffered damages.

### COUNT I: RETALIATION IN VIOLATION OF THE FMLA
### (Defendant Taylor Only)

72. Key restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. During his employment, Key qualified for and took intermittent FMLA leave.

74. Defendant knew Key took FMLA leave.

75. After Key utilized his qualified FMLA leave, Defendant retaliated against him.

76. Defendant terminated Key's employment without reason cited.

77. Defendant's proffered reason (or lack thereof) for Key's termination was pretextual.

78. There was a causal link between Key taking medical leave under the FMLA and Defendant's termination of Key's employment.

79. Defendant actually terminated Key for his FMLA use.

80. Defendant retaliated against Key by terminating his employment.

81. Defendant willfully retaliated against Key in violation of U.S.C. § 2615(a).

82. As a direct and proximate result of Defendant's wrongful conduct, Key is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT II: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.

83. Key restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

8



FILED
AUG 28 2020
MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

84. Key is 57 years old (and was 56 at the time of his termination), and thus is in a protected class for his age.

85. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

86. Defendants treated Key differently than other similarly situated employees based upon his age.

87. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by treating Key differently from other similarly situated employees outside his protected class.

88. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Key's age.

89. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Key's age.

90. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Key's employment because of his age.

91. Defendants' termination of Key's employment was an adverse employment action against him.

92. Defendants terminated Key's employment without reason cited.

93. Defendants' proffered reason (or lack thereof) for Key's termination was pretextual.

94. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Key's employment because of his age.

95. Key incurred emotional distress damages as a result of Defendants' conduct described herein.




FILED
AUG 28 2020
MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

96. As a direct and proximate result of Defendants' acts and omissions, Key has suffered and will continue to suffer damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, et seq.

97. Key restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. Key is in a protected class for his disabilities (described *supra*).

99. Defendants had notice of Key's disabilities.

100. Defendants' termination of Key's employment was an adverse employment action against him.

101. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

102. Defendants treated Key differently than other similarly situated employees based upon his disability.

103. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by treating Key differently from other similarly situated employees outside his protected class.

104. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Key's disability.

105. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Key's disability.

106. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Key's employment because of his disability.

107. Key incurred emotional distress damages as a result of Defendants' conduct described herein.

**FILED**

**AUG 28 2020**



MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

108. As a direct and proximate result of Defendants' acts and omissions, Key has suffered and will continue to suffer damages.

## COUNT IV: FAILURE TO ACCOMMODATE

109. Key restates each and every prior paragraph of this complaint, as if it were fully restated herein.

110. Key informed Defendants of his disabling condition(s).

111. Key requested accommodations from Defendant to assist with his disabilities.

112. Key's requested accommodations were reasonable.

113. There was an available accommodation that would have been effective and would have not posed an undue hardship to Defendants.

114. Defendants failed to engage in the interactive process of determining whether Key needed an accommodation.

115. Defendants failed to provide an accommodation.

116. Defendants violated R.C. §4112.02 by failing to engage Key in the interactive process.

117. Defendants violated R.C. §4112.02 by failing to provide Key a reasonable accommodation.

118. As a direct and proximate result of Defendants' conduct, Key suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: RETALIATION

119. Key restates each and every prior paragraph of this complaint, as if it were fully restated herein.

120. As a result of the Defendants' discriminatory conduct described above, Key complained of the discrimination, harassment, and disparate treatment he was experiencing.

FILED
AUG 28 2020
MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

11

121. Subsequent to Key's complaints to management about harassment, bullying, and disparate treatment toward him, Defendants took adverse employment action(s) against Key.

122. Defendants' actions were retaliatory in nature based on Key's opposition to the unlawful discriminatory conduct.

123. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section..."

124. Key incurred emotional distress damages as a result of Defendants' conduct described herein.

125. As a direct and proximate result of Defendants' acts and omissions, Key has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Key demands from Defendants the following:

a) Issue a permanent injunction:

   i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

FILED
AUG 28 2020
MERCER COUNTY CLERK OF COURTS
CELINA, OHIO

12

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge his personnel file of all negative documentation;

c) An award against Defendants for compensatory and monetary damages to compensate Key for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendants in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Key's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

FILED
AUG 28 2020
CLERK OF COURTS
MERCER COUNTY
CELINA, OHIO


Respectfully submitted,

_/s/ Matthew Bruce_ (AP 0093464)
Matthew Bruce (0083769)
Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
8354 Princeton-Glendale Rd., Suite 203,
West Chester, OH 45069
Phone: (216) 291-4744 (x173)
Fax:    (216) 291-5744
Email: evan.mcfarland@spitzlawfirm.com
Email: matthew.bruce@spitzlawfirm.com

*Attorneys for Plaintiff Billy Key*

## JURY DEMAND

Plaintiff Billy Key demands a trial by jury by the maximum number of jurors permitted.

_/s/_ (AP 0093464)
Matthew Bruce (0083769)

FILED
AUG 28 2020
MERCER COUNTY CLERK OF COURTS
CELINA, OHIO